UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 3:24-CR-74-KAC-JEM-1 |
| | ) |
| TREVON MARQUIS ALLEN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS**

This criminal action is before the Court on United States Magistrate Judge Jill E. McCook's "Report and Recommendation" ("Report") [Doc. 25] regarding Defendant Trevon Marquis Allen's "Motion to Suppress" [Doc. 17] and Defendant's "Objections" thereto [Doc. 28]. For the reasons below, the Court (1) overrules Defendant's objections; (2) accepts and adopts the relevant portions of the Report; and (3) denies Defendant's "Motion to Suppress" [Doc. 17].

**I.    Background**[1]

On March 27, 2024 at around 2:30 p.m., Knoxville Police Department Officer Jarrett Norman stopped at a traffic light in his patrol car while responding to a burglary call [*See* Doc. 25 at 10]. While stopped, Officer Norman observed a black male wearing a white t-shirt, cream-colored pants, and carrying "a crossbody string bag" across his chest hand something to a

---

[1] Defendant does not object to the Report's "Summary of the Evidence" or "Findings of Fact," noting that both are "accurate" recitations of the facts of this case [*See* Doc. 28 at 1-2]. Therefore, the Court generally accepts and adopts these sections of the Report. *See* Fed. R. Crim. P. 59(b)(3). However, the Court has reviewed the relevant authenticated body camera footage from Officer Shaun Ryan [Doc. 21, Ex. 3 (USB flash drive on file with the Court)]. That footage shows that the precise language used by Officer Ryan and Defendant deviates from the facts in the Report at times [*Id.*]. To the extent they differ, the Court cites and relies upon the precise language used in the body camera footage [*See id.*].

1

woman "in front of a liquor store on Magnolia Avenue" [*Id.*].  This area was "known for drug activity" [*Id.* at 10-11].  Based on his training and experience, Officer Norman believed he "observed a hand-to-hand drug transaction" [*Id.*].  Officer Norman then promptly called Officer Shaun Ryan and (1) reported observing the hand-to-hand drug transaction, (2) described the individuals involved in the transaction, and (3) stated that "the man was walking east on Magnolia Avenue" [*Id.* at 11].

Officer Ryan arrived at the location of the hand-to-hand transaction.  "[A]pproximately five minutes after receiving Officer Norman's call," Officer Ryan observed a man matching the description walking east on the Magnolia Avenue sidewalk near the intersection of Kyle Street [*Id.* at 11].  Officer Ryan parked his patrol car, then walked around the front of the car to approach the man, who was later identified as Defendant [*Id.*].

As Officer Ryan walked around the patrol car, he spoke to Defendant asking him "how he was doing," "where he was going," and "what was happening" [*Id.*].  Defendant informed Officer Ryan that he was doing "[g]ood" and that he was walking home [*Id.* (quotation omitted)].  Officer Ryan then stepped onto the curb near the sidewalk where Defendant was standing [*Id.*].  At that point, Officer Ryan asked Defendant what he was doing with "the female up there" [*Id.*].  Defendant, gesturing "up Magnolia Avenue in the direction from which he came, replied that the woman had asked for some change and Defendant had given her fifty cents" [*Id.*].  To prove he had change, Defendant started to unzip his crossbody bag [*Id.*].  Officer Ryan responded "relax, relax, don't be reaching bud" [Doc. 21, Ex. 3 at 0:57-0:59]. Defendant said "alright, alright" [*Id.* at 0:59].

Officer Ryan then asked Defendant "if he minded if [he] check[ed Defendant]" [*Id.* at 0:59-1:00].  Defendant said "nah," indicating that he did not mind [*Id.* at 1:00].  Officer Ryan elaborated

2

on his request, stating that he was checking to "make sure [Defendant] don't got nothing on you" [*Id.* at 1:01-1:02]. Defendant replied: "Yeah. Nah, I ain't got nothing on me" [*Id.* at 1:02-1:04].

Based on that reply, Officer Ryan asked Defendant to turn around and face Officer Ryan's partner, Officer Blood, who had just arrived on the scene and parked his patrol car approximately forty (40) to fifty (50) feet away [Doc. 25 at 11-12]. Defendant did so [*Id.*]. Then "Officer Ryan patted Defendant's outer clothing and felt a firearm in the right front pocket of Defendant's pants" [*Id.* at 12]. Officer Ryan "immediately knew . . . [that item] was a firearm in the [Defendant]'s right pants pocket" [*See id.* at 6]. "Officer Ryan . . . [then] grasped Defendant's wrists and . . . [pulled] Defendant's hands behind" Defendant's back [*Id.*]. At that point, Defendant attempted to break free by lunging forward [*Id.* at 12]. "Officer Ryan wrapped his arms around Defendant," and the pair fell to the ground [*Id.*]. "During the struggle, Defendant attempted to reach for the gun in his pants pocket" [*Id.*]. Officer Blood then "came to assist Officer Ryan and removed the firearm from Defendant's pocket" [*Id.*]. The officers then handcuffed Defendant, and Officer Ryan searched Defendant's pockets and bag [*Id.*].

A federal grand jury indicted Defendant for being a felon in unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) [*See* Doc. 3 at 1]. Defendant filed a "Motion to Suppress" [Doc. 17], seeking to suppress all evidence obtained during the encounter, arguing that Officer Ryan did not have reasonable suspicion to stop Defendant [*See* Doc. 17 at 2-3]. The United States opposed, arguing that the encounter between Officer Ryan and Defendant was consensual, and alternatively that Officer Ryan had reasonable articulable suspicion that Defendant had violated the law [Doc. 18 at 3].

After holding a hearing on the motion to suppress [Doc. 20], Judge McCook issued the Report, concluding that (1) the initial encounter between Defendant and Officer Ryan was a

3

consensual stop, [*see* Doc. 25 at 15]; (2) Defendant voluntarily consented to the frisk, [*id.* at 17]; (3) Officer Ryan had reasonable suspicion to seize Defendant after discovering the firearm, [*id.* at 20]; and (4) Officer Blood properly seized Defendant's firearm in the interest of officer safety, [*id.* at 23]. The Court declined to analyze whether the exclusionary rule would otherwise apply [*Id.* at 23-24]. Defendant objected to the Report's legal conclusions that (1) the stop was a consensual encounter, (2) Defendant voluntarily consented to the frisk, and (3) Officer Ryan had reasonable suspicion to seize Defendant [*See* Doc. 28 at 1]. Defendant also argues that the good faith exception to the exclusionary rule would not apply [*See id.* at 7]. The United States responded, arguing that the stop and frisk were consensual, and that Officer Ryan had reasonable suspicion to detain Defendant [Doc. 29 at 1, 4].

**II.     Analysis**

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If a timely objection is made under Section 636(b)(1)(C) and that objection is not "frivolous, conclusive[,] or general," *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986), "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which [the] objection is made," 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim P. 59(b)(3) ("district judge must consider de novo any objection to the magistrate judge's recommendation"). However, the Court need not engage in de novo review of undisputed portions of the Report. *See Mira*, 806 F.2d at 637; *see also* 28 U.S.C. § 636(b)(1)(C).

"When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses [s]he sees and hears."

4

*United States v. Johnson*, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011); *see also Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002). A magistrate judge's assessment of witness testimony is entitled to deference unless it appears the findings are clearly erroneous or irreconcilably inconsistent with the established record. *See United States v. Raddatz*, 447 U.S. 667, 684 (1980); *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

The Court addresses Defendant's objections temporally, beginning with the initial encounter. Because each of the Officer's actions were constitutionally permissible, the Court overrules Defendant's objections, adopts the relevant portions of the Report, and denies Defendant's Motion to Suppress.

### A. The Initial Encounter And Frisk Were Consensual.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "[T]he Fourth Amendment divides police-citizen interactions into three tiers, which must be justified by correspondingly increasing levels of suspicion." *Bey v. Falk*, 946 F.3d 304, 312 (6th Cir. 2019). Those tiers are: "'(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause.'" *Id.* (quoting *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010)).

A consensual search or seizure is permissible under the Fourth Amendment if the individual subject to the search or seizure consents to it. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Davis*, 328 U.S. 582, 593-94 (1946) (approving of consent searches

5

because they are inherently reasonable). Consent "is a question of fact" assed based on "the totality of the circumstances." *Bustamonte*, 412 U.S. at 226. "To be valid, the consent must be 'voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" *United States v. Sheckles*, 996 F.3d 330, 346 (6th Cir. 2021) (quoting *United States v. Alexander*, 954 F.3d 910, 918 (6th Cir. 2020)). "Numerous data points may inform" the inquiry. *United States v. Tellez*, 86 F.4th 1148, 1151 (6th Cir. 2023). And the scope of one's consent is determined by what a "typical reasonable person" understands in "the exchange between the officer" and the individual. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

In ascertaining "what a typical reasonable person" would understand, the purpose of the encounter guides the scope of an individual's consent. *United States v. Lucas*, 640 F.3d 168, 174-75 (6th Cir. 2011). Words, gestures, and the conduct of the individual during the interaction also assist in ascertaining how a reasonable person would perceive the consent. *See id.*; *see also United States v. Garrido-Santana*, 360 F.3d 565, 575 (6th Cir. 2004). A consensual encounter becomes an investigative detention if "in light of all the circumstances, 'a reasonable person would have believed that he was . . . [not] free to leave.'" *United States v. Young*, 707 F.3d 598, 602 (6th Cir. 2012) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

In a consensual encounter, "law enforcement officers may ask citizens 'general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave.'" *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008) (quoting *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000)). "Examples of circumstances that indicate a . . . [nonconsensual] seizure include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language

or tone of voice indicating that compliance with the officer's request might be compelled.'" *United States v. Lewis*, 843 F. App'x 683, 688 (6th Cir. 2021) (quoting *Mendenhall*, 446 U.S. at 554).

Here, the Report correctly concludes that in the totality of the circumstances (1) the interaction between Defendant and Officer Ryan was a consensual encounter and (2) that Defendant consented to Officer Ryan's frisk. **First,** the initial encounter was consensual. *Bustamonte*, 412 U.S. at 226. Officer Ryan was the only officer present when he initiated a discussion with Defendant [*See* Doc. 25 at 6]. Although Officer Blood arrived later, he was forty (40) to fifty (50) feet away from where Officer Ryan and Defendant were standing, and he did not arrive until after Defendant consented to the encounter [*Id.* at 7-8]. *See Smith*, 594 F.3d at 538 ("the fact that uniformed police officers here were asking [the defendant] questions while surrounding him on both sides, in close physical proximity, with another officer at some distance from him, did not make the encounter non-consensual"). Defendant was not even aware of Officer Blood's presence until after Defendant consented to the frisk [*See* Doc. 25 at 8]. *See United States v. Blomquist*, 976 F.3d 755, 760 (6th Cir. 2020) (noting that the presence of a tactical law-enforcement unit and officer's decision to handcuff the defendant did not weigh against the defendant voluntarily consenting to the search because "these factors do 'not appear to have influenced [the defendant's] actions'" (quoting *United States v. Bond*, 433 F. App'x 441, 445 (6th Cir. 2011)).

Further, neither officer blocked Defendant's path to leave at any time before frisking him [*Id.* at 7-8]. And neither officer physically touched Defendant until he consented to the frisk [*See id.* at 8]. Defendant argues that Officer Ryan's positioning meant Defendant's "path of travel could easily be impeded," [Doc. 28 at 3], but this is far from demonstrating that a "typical reasonable person" would not feel free to leave. *See Jimeno*, 500 U.S. at 251. Rather, Defendant's own words,

7

Case 3:24-cr-00074-KAC-JEM    Document 33    Filed 07/10/25    Page 7 of 14    PageID #: 158

gestures, and conduct during the interaction show that it was a consensual encounter. *See Lucas*, 640 F.3d at 174-75; *Garrido-Santana*, 360 F.3d at 575. When asked what he was doing near the liquor store, Defendant gestured "up Magnolia Avenue in the direction from which he came, repl[ying] that the woman had asked for some change," which he gave her [Doc. 25 at 8]. To prove he had change, Defendant stated "I'll show you. I got change in my" bag as he attempted to reach for his crossbody bag and unzip it [*Id.*]. These words and conduct demonstrate Defendant's understanding that the encounter was consensual, and that he could have left. *See Garrido-Santana*, 360 F.3d at 575; *see also United States v. Ortiz*, 455 F. App'x 669, 671-72 (6th Cir. 2012) (holding that "stepping back, gesturing, and opening the door wider . . . unambiguously conveyed" consent to officers' request to enter).

Nor did Officer Ryan's questioning exceed the bounds of a consensual encounter—he asked general questions in public view. *See United States v. Beauchamp,* 659 F.3d 560, 568 (6th Cir. 2011) ("[i]t is clear that the police do not make unreasonable seizures 'merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen'" (quoting *United States v. Drayton*, 536 U.S. 194, 200 (2002)). And Officer Ryan's questions were open-ended and in a normal tone of voice, which further suggest that a reasonable person would have felt free to leave [*See* Doc. 25 at 4-16]. *See Davis*, 514 F.3d at 607; *United States v. Preston*, 579 F. App'x 495, 499 (6th Cir. 2014) (no seizure occurred when an officer "asked in a conversational tone to see [the defendant's] hands . . . without drawing his gun, and without accusing [the defendant] of wrongdoing, or physically touching him"). This conduct also underscores that Defendant was not coerced by any purported show of force by officers. *See United States v. Campbell*, 486 F.3d 949, 956 (6th Cir. 2007) (the defendant was not seized when

8

an officer did not "draw[] his weapon []or activate[] his emergency lights or siren" while asking the defendant general questions).

Officer Ryan's body camera footage, and the testimony of Officer Ryan and Officer Norman support this [*See* Docs. 21, Ex. 3; 25 at 4-8]. Judge McCook found that footage and the Officers' testimony persuasive and credible [*See* Doc. 25 at 4-8]. *See Raddatz*, 447 U.S. at 684. The record supports that view. The footage indicates that the questioning lasted less than one (1) minute and shows that much of the questioning was Officer Ryan either making pleasantries or asking Defendant where he was headed [*See* Doc. 21, Ex. 3 at 0:30-1:19]. *See Kowolonek v. Moore*, 463 F. App'x 531, 536 (6th Cir. 2012) (noting that as "the officers used the five minutes only to conduct their investigation and to confirm [the suspect]'s identity, it cannot be said that the duration of the stop was unreasonable"). And although Officer Ryan did not tell Defendant that he could refuse to talk with him, this factor alone is insufficient to show that the encounter was not consensual. *See Sheckles*, 996 F.3d 330, 347. Accordingly, in a totality of the circumstances, the Report correctly concludes that the initial encounter between Defendant and Officer Ryan was a consensual encounter, not an investigative stop. *See Davis*, 514 F.3d at 607; *see also United States v. Cowan*, 704 F. App'x 519, 522-25 (6th Cir. 2017).

***Second***, the Report concludes that "the totality of the circumstances show that Defendant voluntarily consented to the frisk" [Doc. 25 at 17]. Defendant objects to that conclusion [*See* Doc. 28 at 1-2]. But Defendant agrees that the Report's "Summary of the Evidence" and "Findings of Fact" are an "accurate" recitation of the facts of this case [*See* Doc. 28 at 1-2]. These facts show that Defendant consented to the frisk. After consenting to the initial discussion, Officer Ryan asked Defendant "if he minded if [he] check[ed Defendant]" [Doc. 21, Ex. 3 at 0:59-1:00]. Defendant said "nah," indicating that he did not mind [*Id.* at 1:00]. Officer

9

Ryan elaborated on his request, stating that he was checking to "make sure [Defendant] don't got nothing on you" [*Id.* at 1:01-1:02]. Defendant replied: "Yeah. Nah, I ain't got nothing on me" [*Id.* at 1:02-1:04]. In context, these statements indicate that Defendant consented to the frisk. *See Tellez*, 86 F.4th at 1152 (noting that "[t]here is no particular script for seeking consent"); *see also United States v. Chambers*, 646 F. App'x 445, 448 (2016); *see also Drayton*, 536 U.S. at 199 (silently lifting hands was considered consent to a pat-down); *Garrido-Santana*, 360 F.3d at 575. Officer Ryan's body camera footage confirms these statements and visually shows Defendant's consent to the frisk [*See* Doc. 21, Ex. 3 at 0:30-1:19].

Defendant "was an adult and showed no indications that he lacked the knowledge to consent," which supports the voluntariness of his consent. *See Tellez*, 86 F.4th at 1153 (citing *Gale v. O'Donohue*, 824 F. App'x 304 (6th Cir. 2020)). While Officer Ryan did not tell Defendant that he could refuse the frisk, this fact alone is not dispositive. *See Sheckles*, 996 F.3d 330, 347 ("Although 'knowledge of the right to refuse consent' is a relevant factor, it is not 'a necessary prerequisite' for finding voluntariness" (quoting *Bustamonte*, 412 U.S. at 232)). This is especially true where, as here, crisp visual evidence shows the precise statements made and physical interactions between the officer and the individual, allowing the Court to plainly assess voluntariness. Accordingly, the Report correctly concludes that Defendant voluntarily consented to the encounter and the frisk. Therefore, the Court overrules Defendant's objections and accepts and adopts those portions of the Report.

**B. Officer Ryan Had Reasonable Suspicion To Seize Defendant.**

Next, Defendant challenges the Report's conclusion that following the consensual frisk, his "seizure was lawfully based on reasonable suspicion" [*See* Doc. 28 at 1, 5]. The United States argues that Officer Ryan had reasonable suspicion to seize Defendant based on a

combination of (1) Officer Norman's observation of the alleged hand-to-hand drug transaction, (2) Defendant's corroboration of Officer Norman's observation by confirming Defendant handed something to a woman, and (3) Officer Ryan's discovery of a firearm on Defendant's person during the consensual frisk [*See* Doc. 29 at 4].

Here, Officer Ryan restrained Defendant's wrists behind his back, seizing him, [*see* Doc. 25 at 8]. *See Lewis*, 843 F. App'x at 688 (quoting *Campbell*, 486 F.3d at 954). "'[O]nce a consensual encounter escalates to the point where the individual is 'seized,' the police officer must have a reasonable suspicion of criminal activity to justify a *Terry* stop, or probable cause to justify an arrest, in order for the seizure to comply with the Fourth Amendment.'" *See id.* (quoting *Campbell*, 486 F.3d at 954). Reasonable suspicion is a relatively low standard. *See United States v. McCallister*, 39 F.4th 368, 373-74 (6th Cir. 2022). It only requires an officer to have 'reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)). "Reasonable suspicion 'must be based on specific, objective facts.'" *Id.* "Although a mere 'hunch' does not create reasonable suspicion . . . the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (citations omitted). Reasonable suspicion is assessed "based on the totality of circumstances in place at the time of seizure." *Johnson*, 620 F.3d at 692.

But officers are permitted "to judge [an individual's] behavior and the information obtained" during the course of the lawful "stop against the backdrop of their own experience and knowledge," *Smith*, 554 F.3d at 983, and "to make inferences from and deductions about the

11

cumulative information available to them that 'might well elude an untrained person," *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *See id.*, 534 U.S. at 277-78 (citation omitted). Rather, "[i]n considering all of the circumstances, the question is . . . whether all of [the factors] taken together give rise to the reasonable suspicion that criminal activity may be afoot." *United States v. Marxen*, 410 F.3d 326, 329 (6th Cir. 2005) (citing *Arvizu*, 534 U.S. at 274-75).

The Report correctly concludes that Officer Ryan had reasonable suspicion of Defendant engaging in criminal activity based on the combination of (1) the information relayed by Officer Norman and (2) the presence of something Officer Ryan "immediately knew was a firearm in the [Defendant]'s right pants pocket" [*See* Doc. 25 at 5-6]. *See also McCallister*, 39 F.4th at 373-74. Defendant argues that facts Officer Ryan learned after encountering Defendant cannot support reasonable suspicion because Officer Ryan needed reasonable suspicion to approach Defendant at the outset [*See* Doc. 28 at 5-6]. However, as noted already, Defendant's encounter with Officer Ryan was a consensual encounter until Officer Ryan physically restrained Defendant. And the various facts Officer Ryan ascertained before he seized Defendant properly informed his reasonable suspicion. *See Lewis*, 843 F. Appx. at 690 (noting that the police "had reasonable suspicion to justify a *Terry* stop because **by the time that [the defendant] was seized**, [the officer] had multiple indicators that [the defendant] may have been involved in criminal activity" (emphasis added)).

At the time Officer Ryan seized Defendant, he had more than enough specific objective facts to establish reasonable suspicion. Those facts included (1) the information relayed by Officer Norman regarding a purported hand-to-hand drug transaction in a high crime area

12

and (2) the presence of something Officer Ryan "immediately knew was a firearm in the [Defendant]'s right pants pocket" [*See* Doc. 25 at 5-6]. Viewed together, these facts establish reasonable suspicion. *See United States v. Jeter*, 721 F.3d 746, 755 (6th Cir. 2013) ("[t]he district court correctly found that" the defendant's "grabbing of his pocket in a 'high crime area,' provides the inference of suspicious behavior that justifies" a brief seizure); *United States v. Jones*, 673 F.3d 497, 502-03 (6th Cir. 2012) (concluding that police observation of a hand-to-hand transaction in an area with high drug activity justified reasonable suspicion); *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) ("the officers had a reasonable suspicion that [the defendant] was engaged in criminal activity based upon his hand movements consistent with drug-dealing activity . . . and presence in a high crime area"). Accordingly, the Court overrules Defendant's objections to his seizure, and accepts and adopts those portions of the Report.

### C. Law Enforcement Lawfully Seized Defendant's Firearm.

Generally, law enforcement may seize a weapon or contraband the officer has identified by "plain feel" during a lawful frisk. *See Minnesota v. Dickerson*, 508 U.S. 366, 374-75 (1993). In fact, the "[s]eizure of items during a patdown is warranted if the officer reasonably believe[s] that the [concealed item] could be a weapon." *United States v. Garcia*, 496 F.3d 495, 505 (6th Cir. 2007) (citation omitted)); *see also Smith*, 594 F.3d at 542 (concluding that police officers may properly seize weapons for which the defendant was reaching as he attempted to push past officers who ordered him to stop).

Officer Ryan's initial encounter, frisk, and seizure of Defendant were lawful. Defendant's argument that the firearm was unlawfully seized is predicated solely on his argument that the Officers acted unlawfully at some point in the encounter before they seized the firearm [*See* Doc. 28 at 5-6]. Because no Officer acted unlawfully during the initial encounter, frisk, or

13

seizure, the Court overrules Defendant's objections to the seizure of his firearm, and accepts and adopts those portions of the Report. Further, because no Fourth Amendment violation occurred, the Court does not consider whether the good faith exception to the exclusionary rule would otherwise apply [*See* Doc. 25 at 23-24].

**III. Conclusion:**

Accordingly, the Court **OVERRULES** Defendant Trevon Marquis Allen's "Objections to the Report and Recommendation" [Doc. 28], **ADOPTS** the "Report and Recommendation" [Doc. 25] as set forth herein, and **DENIES** Defendant's "Motion to Suppress" [Doc. 17].

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge